**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br><br>LIGHTBEAM LENDING INC. AND CLEAN ENERGY ASSOCIATES, LLC<br><br>                      Defendants. | Case No. 4:24-cv-00595<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Kelly Bland ("Mrs. Bland"), by her undersigned counsel, for this class action complaint against Defendants LightBeam Lending Inc. and Clean Energy Associates, LLC, as well as their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.     INTRODUCTION

1.     <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

## II.   PARTIES

5. Plaintiff Bland is an individual who resides in the Northern District of Texas.

6. Defendant LightBeam Lending Inc. is a Texas-based solar company that sells solar panels in Texas. Its headquarters and principal place of business lies in this District.

7. Defendant Clean Energy Associates, LLC is a lead generator for solar companies. LightBeam hired this defendant to place illegal telemarketing calls on its behalf.

## III.   JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violations of the Texas Business and Commerce Code relates to the same telemarketing campaign as the TCPA claim.

9. Personal Jurisdiction: This Court has personal jurisdiction over Defendants. The Court has general personal jurisdiction over Defendants because they are headquartered and have their principal place of business in Texas.

10. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent from this District.

## IV. FACTS

**A.  The Enactment of the TCPA and its Regulations**

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.  The Texas Business and Commerce Code**

16. Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

17. The burden of proof lies on a defendant to show it registered each business location to prove it licensure or on proving an exemption. *Id*. § 302.051.

18. The sale of solar panel services is not a product or service for which there is an exemption to the Code. *Id*. § 302.051.

19. Defendants are not registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying "LightBeam," "Light Beam," or "Clean Energy" as either a DBA or seller name returns no results).

C. **Unsolicited Telemarketing to Plaintiff**

20. Plaintiff Bland is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff Bland's telephone number, (817) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

22. Plaintiff Bland uses the telephone number for her own personal, residential, and household needs and reasons.

23. Plaintiff Bland does not use the number for business reasons or business use.

24. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

25. Plaintiff Bland's number has been on the National Do Not Call Registry for years since she registered it on the Registry prior to receiving the calls at issue.

26. Despite that, Mrs. Bland received at least 6 automated calls from the caller IDs 806-498-1646 and 210-263-1938 between April 4, 2024 and June 5, 2024.

27. The callers in these calls stated that they were calling from "Clean Energy Associates."

28. After the first call on April 4, 2024 from the caller ID 806-498-1646, the Plaintiff received a call from someone with "Clean Energy Associates" who stated that they wanted to sell the Plaintiff solar panels. The Plaintiff stated that she was not interested and to stop calling.

29. The calls continued, including a call from the same caller ID 806-498-1646 on April 13, 2024.

30. On May 4, 2024, the Plaintiff received a missed call from the caller ID 210-263-1938.

31. The calls from this caller ID continued throughout May and June, with the caller stating that they were calling from "Clean Energy Associates."

32. Determined to identify the identity of the caller who was calling her illegally and for no other reason, the Plaintiff set an appointment for a salesman to come out to her home to sell her solar panels.

33. On June 6, 2024, the day of the appointment, "Eric," a representative from LightBeam Lending, showed up at the Plaintiff's door step, as reproduced on the following page:



6



34. The Plaintiff recorded the interaction with "Eric," the salesman on her door step, who told her that Sameer Sethi and an individual named "Frank Rothko" was the owners of Defendant LightBeam.

35. After this encounter, the Plaintiff sent LightBeam an email to confirm the nature of the encounter and ascertain why she was blasted with illegal calls which resulted in the aforementioned salesman showing up at her door.

36. In response, the Plaintiff received multiple calls from an individual named "Robert Neal," who stated that LightBeam hired Defendant Clean Energy Associates LLC (CEA), one of over "dozens" of lead generators, to place the illegal calls at issue.

37. None of the aforementioned Defendants are registered as telephone solicitors with the Texas Secretary of State.

38. Ultimately, LightBeam's story, as confirmed through telephone correspondence, was that, with respect to the Plaintiff, it hired Clean Energy Associates LLC to place the calls and that the individual sent to the Plaintiff's door step, who was an employee with Defendant LightBeam, was sent as a result of the illegal calls the Plaintiff received.

39. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

40. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

41. The FCC has instructed that sellers such as LightBeam may not avoid liability by outsourcing telemarketing to third parties, such as CEA:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

42. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

43. LightBeam is liable for telemarketing calls placed by CEA and transferred to LightBeam and its agents to generate customers for LightBeam and its agents, including the Plaintiff.

44. LightBeam was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones so it did not want to waste precious human resources in sending its employees to appointments of individuals who were not interested.

45. To do so, it hired CEA to orchestrate an *en masse* telemarketing campaign and then set appointments for interested customers that met its criteria.

46. LightBeam controlled the day-to-day activities of CEA by providing the specific criteria for the leads it would accept and required its vendors, including CEA, to adhere to those criteria, for example, solar shading and minimum income and property values.

47. LightBeam also directed CEA to use its name in the initial sales pitch, since otherwise being associated with illegal telemarketing would cause ill will for the Defendant's brand.

48. For example, the calls Plaintiff received demonstrate that LightBeam required its vendor to use the same caller ID but disguise itself as "Clean Energy Associates" such as to avoid ill will toward Defendant's brand or directed at its agents.

49. It also authorized CEA to set appointments on its behalf and would then send a LightBeam employee, fully decked-out in a LightBeam uniform, to the premises of individuals that CEA called illegally.

50. Defendants did so despite numerous explicit indications that the Plaintiff was not interested and did not want any further calls.

51. As such, LightBeam controlled the content of CEA's telemarketing.

52. It also could and should have communicated Plaintiff's multiple requests not to be called to CEA.

53. CEA, likewise, could and should have communicated Plaintiff's multiple requests not to be called to LightBeam.

54. Finally, LightBeam could have terminated CEA.

55. It did not.

56. By virtue of identifying the leads that they would accept and directing the conduct and other indicia of the calls at issue described above, LightBeam directed the content of the communications that CEA would use in their calling, including by authorizing CEA to directly set LightBeam appointments.

57. A reasonable seller whose telemarketers are making calls would investigate into the reasons why they would be calling numbers on the National Do Not Call Registry and, moreover, individuals who already stated that they no longer wished to receive calls from LightBeam or CEA.

58. Indeed, LightBeam could have investigated, prior to sending its employees to houses of individuals whose numbers were on the Do Not Call Registry, whether such numbers were on the National Do Not Call Registry.

59. It did not.

60. LightBeam hired CEA without a proper investigation and did not terminate them when they were informed of CEA's illegal calling conduct.

61. As such, they knowingly ratified CEA's conduct.

62. LightBeam also ratified CEA's conduct because, with knowledge of Plaintiff's complaints against CEA and do not call requests to a CEA agent, they accepted the Plaintiff's lead and ultimately showed up to the Plaintiff's door step.

63. LightBeam accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her after she made clear she did not want the calls.

64. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

65. Plaintiff's privacy has been violated by the above-described telemarketing calls.

66. Plaintiff never provided her consent or requested these calls.

67. The aforementioned calls to the Plaintiff were unwanted.

68. The calls were non-consentual encounters.

69. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V.     CLASS ACTION ALLEGATIONS

70.     <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of CEA or LightBeam, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Texas Business and Commerce Code Class**: All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendants, (2) at any time during which Defendants were not registered as a telephone solicitor with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

71.     Excluded from the Classes are counsel, Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

72.     The Classes, as defined above, are identifiable through telephone records and telephone number databases.

73.     The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

74.     Individual joinder of these persons is impracticable.

75.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

76.     Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

77. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

78. This class action complaint seeks injunctive relief and money damages.

79. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. Whether LightBeam is vicariously liable for the actions of CEA, and the corresponding liability as between them;

    b. whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    c. whether Defendants made telephone solicitations to members of the Texas Business and Commerce Code class without the required registration;

    d. whether Defendants made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

    e. whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

80. Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

81. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the

Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

82. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

83. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

84. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

85. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

86. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

87. Defendants' violations were negligent, willful, or knowing.

88. As a result of Defendants', and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

89. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Texas Business and Commerce Code
### Violations of Texas Business and Commerce Code § 302.101
### (On Behalf of Plaintiff and the Texas Business and Commerce Code Class)

90. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

91. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

92. Defendants' violations were negligent, willful, or knowing.

93. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D.   An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.   An award to Plaintiff and the Classes of damages, as allowed by law; and

F.   Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.   DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this June 29, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Classes*